UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALICE K.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-01990-DLP-RLY |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Alice K. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court hereby **AFFIRMS** the ALJ's decision denying the Plaintiff benefits.

### I. PROCEDURAL HISTORY

On February 23, 2015, Alice filed an application for Title II DIB. (Dkt. 12-5 at 2-3, R. 215-16). The Social Security Administration ("SSA") denied Alice's claim initially on July 30, 2015, (Dkt 12-3 at 47, R. 117), and on reconsideration on October 30, 2015. (Id. at 64, R. 134). On December 10, 2015, Alice filed a written request for a hearing, which was granted. (Dkt. 12-4 at 46, R. 179). On July 20, 2017,

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

Administrative Law Judge ("ALJ") T. Whitaker conducted a hearing, where Alice appeared in person and vocational expert, Anthony Andrews, appeared telephonically. (Dkt. 12-2 at 42, R. 41). On January 19, 2018, ALJ Whitaker issued an unfavorable decision finding that Alice was not disabled. (Dkt. 12-2 at 16-32, R. 15-31). Alice appealed the ALJ's decision, and, on February 11, 2019, the Appeals Council denied Alice's request for review, making the ALJ's decision final. (Dkt. 12-2 at 2-4, R. 1-3).

Alice filed an appeal in the United States District Court for the Southern District of Indiana on April 9, 2019. (Dkt. 12-10 at 35-36, R. 1613-614). On November 20, 2019, Magistrate Judge Mark Dinsmore reversed the ALJ's decision and remanded the matter for further proceedings. (Dkt. 12-10 at 44-60, R. 1622-638). The Appeals Council remanded the matter back to the agency on January 17, 2020[2]. (Dkt. 12-10 at 62-64, R. 1640-642). On May 4, 2020, a second hearing was held before ALJ Whitaker, where Alice, medical expert Dr. Lee Fischer, medical expert Dr. James Brooks, and vocational expert Gail Franklin appeared telephonically. (Dkt. 12-9 at 37, R. 1475). On May 28, 2020, ALJ Whitaker issued an unfavorable decision finding that Alice was not disabled. (Dkt. 12-9 at 5-21, R. 1443-459). Alice now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

---

[2] Alice filed a subsequent Title II application for disability benefits on May 29, 2019. The Appeals Council deemed it a duplicate application and ordered the ALJ to consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims pursuant to 20 C.F.R. § 404.952 and HALLEX I-1-1010. (Dkt. 12-10 at 64, R. 1642).

## II.   STANDARD OF REVIEW

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a)[3]. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then

---

[3] Because the statutory references for SSI and DIB claims are substantially similar, the Undersigned will reference them interchangeably throughout this opinion.

she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520. (A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(iv).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is

sufficient for a reasonable person to conclude that the evidence supports the decision. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Alice is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to her conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the

path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Alice was forty-three years old as of the adjudicative start date of August 12, 2014. (Dkt. 12-2 at 45, R. 44). She completed two years of college and got an Associate Degree. (Dkt. 12-6 at 27, R. 267; Dkt. 12-2 at 45, R. 44). She has past relevant work history as a laboratory technician. (Dkt. 12-9 at 19, R. 1457).

#### B. ALJ Decision

In determining whether Alice qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Alice was not disabled. (Dkt. 12-9 at 5-21, R. 1443-459). At Step One, the ALJ found that Alice had not engaged in substantial gainful activity during the period from the adjudicative start date of August 12, 2014 through her date last insured of December 31, 2018. (Id. at 8, R. 1446).

At Step Two, the ALJ found that Alice has the following severe impairments: degenerative disc disease, spondylosis, spondyloarthrosis, and retrolisthesis of lumbar spine with chronic midline low back pain without sciatica status post fusion; post-laminectomy syndrome; myofascial pain syndrome; cervical, chronical pain disorder; hypothyroidism; iron deficiency anemia with history of pernicious anemia (vitamin B12 deficiency); major depressive disorder with history of suicidal ideations; dysthymic disorder; post-traumatic stress disorder; generalized anxiety disorder;

6

insomnia, unspecified; and chronic prescription opiate use. (Id.). The ALJ also found that Alice has the following non-severe impairments: prediabetes with hyperglycemia; refractive error; sinusitis; history of acute bacterial bronchitis; seasonal and perennial allergic rhinitis; gastroesophageal reflux disease; history of febrile illness; dyspnea, and respiratory abnormality; dyspepsia; history of urinary tract infection; hiatal hernia; hemorrhoids; history of right ankle sprain; history of left ankle sprain; history of knee bursitis; breast pain/costochondritis; vitamin D deficiency; pseudotumor cerebri and papilledema; benign intracranial hypertension; episode tension headaches; Raynaud's syndrome; history of ankle sprains; history of hip bursitis and hip condition related to ankle sprains; history of shin splints; and fibroid uterus and ovarian cyst. (Id. at 8-9, R. 1446-447). The ALJ did not consider fibromyalgia to be a medically determinable impairment. (Id. at 9, R. 1447).

At Step Three, the ALJ found that Alice's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926, considering Listing 1.04 for disorders of the spine; Listing 7.05 for hemolytic anemias; Listing 9.00 for endocrine disorders; Listing 12.04 for depressive disorders; Listing 12.06 for anxiety disorders; and Listing 12.15 for trauma and stressor-related disorders. (Dkt. 12-9 at 9-10, R. 1447-448).

As to the "paragraph B" criteria, the ALJ concluded that Alice had a mild limitation in understanding, remembering, or applying information and a moderate

limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Id. at 10, R. 1448).

After Step Three but before Step Four, the ALJ found that Alice had the residual functional capacity ("RFC") to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(b) and 416.967(a), with the following limitations: lift, carry, push, and pull ten pounds occasionally and five pounds frequently; sit for a total of six hours in an eight hour workday and stand and walk, in combination, for a total of two hours of an eight hour workday, but she can only stand and walk, each, for not greater than 30 minutes at one time; after sitting for one hour, must allow for standing or walking for at least five minutes while remaining on task before resuming sitting; work for two hours and then a take a 30-minute meal break, then work another two hours and then take a 15-minute break, and then work another two hours and conclude the eight hour workday; never climb ladders, ropes, or scaffolds; never kneel, crouch, or crawl; occasionally stoop, but can never repetitively stoop below the waist; no exposure to vibration or unprotected heights; limited to simple, routine, and repetitive work with "simple" defined as unskilled work; limited to no production rate or pace work; limited to work with only occasional workplace changes; limited to work with only occasional interaction with the public, coworkers, and supervisors. (Dkt. 12-9 at 11, R. 1449).

At Step Four, the ALJ concluded that Alice is not able to perform her past relevant work as a laboratory technician. (Dkt. 12-9 at 19-20, R. 1457-458). At Step Five, relying on the vocational expert's testimony, the ALJ determined that,

8

considering Alice's age, education, work experience, and residual functional capacity, she was capable of adjusting to other work. (Id. at 20-21, R. 1458-459). The ALJ thus concluded that Alice was not disabled. (Id. at 21, R. 1459).

## IV. ANALYSIS

Plaintiff presents four arguments in support of remand: (1) the ALJ's analysis of Plaintiff's pain is not supported by substantial evidence; (2) the ALJ's analysis of Plaintiff's activities of daily living is not supported by substantial evidence; (3) the ALJ erred in her evaluation of the opinion evidence; and (4) the ALJ's Step Five conclusion is not supported by substantial evidence.

### i. *Conservative Treatment*

First, Plaintiff argues that the ALJ erred when considering her pain symptoms by characterizing her treatment as conservative. (Dkt. 14 at 25-26). Plaintiff contends that she has had two spinal surgeries and a spinal cord stimulator, along with continued pain management and physical therapy, such that her treatment cannot be deemed conservative. (Id.) The Commissioner maintains that Plaintiff's treatment was conservative and that no error occurred where the ALJ relied on a medical expert's opinion to determine Plaintiff's functional limitations. (Dkt. 18 at 9-10).

While it may be true that Alice's recent treatment has been conservative, the Court finds this is because Plaintiff's doctors have deemed her at maximum medical improvement and there are no medical treatments left available to her. The ALJ failed to acknowledge this in the decision; however, the error is harmless given the

fact that Plaintiff has not made any argument regarding the effect of the ALJ's error on the decision. Without any such argument, the Court deems this argument waived.

    *ii. Activities of Daily Living*

Plaintiff next argues that the ALJ's evaluation of her activities of daily living was not supported by substantial evidence. (Dkt. 14 at 26-28). Plaintiff points to the ALJ noting several times that she is able to do many activities of daily living, including "caring for her dogs, driving, and shopping in stores," and that she volunteered at an animal shelter and fostered dogs. (Id.).

SSR 16-3 advises adjudicators that they should consider a claimant's activities of daily living when evaluating the severity of the claimant's symptoms. The Seventh Circuit has criticized ALJs who infer an ability to perform full-time work from an ability to perform activities of daily living. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016); *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). In the same vein, the ALJ must review the evidence, including a claimant's activities of daily living, to assess whether a claimant is exaggerating the effects of her impairments. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). Here, there is no evidence that the ALJ overstated Alice's ability to perform activities of daily living, nor did the ALJ infer from those activities an ability to perform full-time work. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (noting that ALJ discussed claimant's performance of activities of daily living but did not equate it with ability to work). Accordingly, the Court finds no error in the ALJ's consideration of Plaintiff's activities of daily living.

### *iii. Opinion Evidence*

Next, Plaintiff contends that the ALJ erred by giving partial or little weight to four of her treating providers: Dr. Cole, Dr. Gibson, Dr. Nolan, and Licensed Clinical Social Worker Mr. Patee. (Dkt. 14 at 28-31). The Court will address each provider in turn.

### *a. Dr. Cole*

Under the "treating physician" rule, which applies to Alice's claim, an ALJ should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record. *See* 20 C.F.R. § 416.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies only to claims filed before March 27, 2017). An ALJ is authorized, however, to reject a treating physician's opinion, so long as she offers "good reasons" for doing so. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

If an ALJ does not give a treating physician's opinion controlling weight, the ALJ is required to consider the length, nature, and extent of the treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency and supportability of the physician's opinion. *Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); 20 C.F.R. § 416.927(c). However, so long as the ALJ "minimally articulates" her reasoning for discounting a treating source opinion, the Court must uphold the determination. *See Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming

11

the denial of benefits where the ALJ discussed only two of the relevant regulatory factors).

The SSA requires that the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *7. The Seventh Circuit has explained that "[a]n ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'" *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (citing *Clifford*, 227 F.3d at 871; *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)). "It is not enough for the ALJ to address mere portions of a doctor's report." *Myles*, 582 F.3d at 678 (citing *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)).

Plaintiff's primary argument is that the ALJ improperly rejected Dr. Cole's opinion that she would need to sit or stand at will. (Dkt. 14 at 30-31). Plaintiff contends that the ALJ (1) impermissibly interpreted medical evidence when she concluded that the imaging studies did not support a limitation that Plaintiff needed to sit and stand at will and (2) inappropriately failed to give Dr. Cole controlling weight when his opinion was supported by the record and consistent with other evidence. (Id.). First, when concluding that the clinical findings and related imaging did not support Dr. Cole's recommendation that Plaintiff have a limitation to alternate sitting and standing at will, the ALJ did not interpret any medical

12

evidence; instead, the ALJ relied on Dr. Lee Fischer's medical expert opinion[4] that the sit/stand limitation is not medically necessary. Specifically, Dr. Fischer testified that an individual with Alice's impairments could perform sedentary exertion work with additional restrictions and limitations. (Dkt. 12-9 at 53, R. 1491). As relevant to the sit/stand limitation, Dr. Fischer testified that Alice would be able to sit for one hour, change positions while remaining on task, sit for another hour, take a break, then sit for another hour, then change positions while remaining on task, take a lunch break, and so on throughout the workday. (Id. at 54, 63-64, R. 1492, 1501-502). Dr. Fischer also stated that it would not be medically necessary for Alice to sit, stand, or walk at will throughout the day, and that Dr. Cole's opinion regarding Alice's need to alternate positions at will is contradicted by the consultative exam that showed a normal gait and no significant physical exam abnormalities. (Id. at 58-59, R. 1496-497). The ALJ gave great weight to Dr. Fischer's testimony. (Dkt. 12-9 at 14, R. 1452), and appropriately relied on the medical expert's opinion to discount Dr. Cole's opinion regarding the sit/stand limitation. *See Frank S. v. Kijazkazi,* No. 20-CV-3429, 2022 WL 832660, at *3 (N.D. Ill. Mar. 21, 2022) (citing *Apke v. Saul*, 817 Fed. App'x 252 (7th Cir. 2020)) (appropriate to rely on medical expert's testimony when discounting treating physician).

Second, although the Plaintiff argues that the ALJ should have given controlling weight to Dr. Cole's opinion, she never actually explains how Dr. Cole's

---

[4] Dr. Fischer is the medical expert hired by the Social Security Administration to testify in this matter. Dr. Fischer, a family medicine physician, reviewed the complete record and testified at the May 4, 2020 hearing. (Dkt. 12-9 at 49, R. 1487). Plaintiff had no objection to Dr. Fischer's qualifications. (Dkt. 12-9 at 44-45, R. 1482-483).

opinion is supported by the record or consistent with other evidence. The Seventh Circuit has held in a Social Security Disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)). Plaintiff fails to develop her argument with any citations to the record and the Court declines to manufacture any such analysis for the Plaintiff. Because this argument is perfunctory and undeveloped, the Court deems it waived.

    b. *Dr. Gibson*

Next, Plaintiff asserts that the ALJ erred by giving partial weight to Dr. Gibson, because the ALJ's rationale for discounting his opinion is internally inconsistent and does not allow for meaningful review. (Dkt. 14 at 28). Specifically, Plaintiff takes issue with the ALJ deeming portions of Dr. Gibson's opinion "vague" and "inconsistent with the substantial evidence," arguing that the ALJ should have explained what in Dr. Gibson's report was not consistent with the rest of the record. (Id.). The Commissioner argues that the ALJ's decision to give partial weight to Dr. Gibson was supported by substantial evidence, in large part due to the ALJ giving substantial weight to the opinions of medical experts Drs. Fischer and Brooks. (Dkt. 18 at 8-11).

As an initial matter, Plaintiff seems to have misinterpreted the ALJ's conclusions regarding Dr. Gibson's medical opinion. The ALJ concluded that Dr. Gibson's opinion regarding sedentary classification, an inability to carry out activities

on a constant basis, no work that requires accuracy or that could result in injury to herself or others, no bending or squatting, and no lifting or carrying of more than 10 pounds was somewhat consistent with Dr. Gibson's exam findings and the substantial evidence of record, including the findings from the consultative exam which showed a stable and normal gait and 5/5 motor strength. (Dkt. 12-9 at 15, R. 1453). Only as to Dr. Gibson's conclusion that Alice would have "impaired mental abilities from pain medication" and "the inability to carry out activities on a consistent basis" did the ALJ conclude that these statements were vague and inconsistent with substantial evidence and Dr. Gibson's observations that Plaintiff provided a history of her impairments during the exam and answered questions appropriately. (Id.). Moreover, the ALJ relied on medical expert Dr. James Brooks's testimony at the hearing[5], who concluded that the only functional limitation supported by the record was "at least occasional interaction with the public, coworkers, and supervisors."
(Dkt. 12-9 at 71, R. 1509). Dr. Brooks found that Alice would not need accommodations for occasional workplace changes, time off task, absences from work, or work with a particular production rate, specifically taking into account only her mental impairments. (Id. at 72-74, R. 1510-512). Dr. Brooks based his conclusions on a thorough review of the record, citing to various mental status examinations that showed normal mood and behavior; logical thoughts, intact memory, fair attention, and above average intellectual functioning; all cognitive functioning including

---

[5] Dr. Brooks is the other medical expert hired by the Social Security Administration to testify in this matter. Dr. Brooks, a licensed clinical psychologist, reviewed the complete record and testified at the May 4, 2020 hearing. (Dkt. 12-9 at 65-66, R. 1503-503). Plaintiff had no objection to Dr. Brooks's qualifications. (Dkt. 12-9 at 45, R. 1483).

15

memory intact; able to perform calculations; able to follow simple and complex commands; IQ estimated to be within normal limits; and normal attention and concentration. (Dkt. 12-9 at 66-71, R. 1504-509). The ALJ gave sufficient reasons to discount Dr. Gibson's medical opinion, including vagueness and inconsistency, and instead chose to rely on the medical experts' opinions. As such, the Court cannot conclude that the ALJ erred by giving partial weight to Dr. Gibson's opinion.

    *c. Dr. Nolan*

Plaintiff next contends that the ALJ erred by giving Dr. Nolan's medical opinion little weight. (Dkt. 14 at 29). Plaintiff, however, does not make any argument about what in the RFC would change had Dr. Nolan's medical opinion been given any additional weight by the ALJ. Although Plaintiff argues that Dr. Nolan's opinions regarding the severity of her depression and associated symptoms warrant giving Dr. Nolan's greater weight, Plaintiff provides no discussion that would connect that contention to any proposed greater functional limitations.

Regardless, the ALJ provided sufficient reasons for discounting Dr. Nolan's medical opinion. Specifically, the ALJ indicated that Dr. Nolan's opinion was vague and did not identify any specific functional limitations. (Dkt. 12-9 at 16, R. 1454). Additionally, the ALJ stated that the GAF scores were vague subjective multifactorial snapshots in time, and that the particular GAF score found by Dr. Nolan was inconsistent with the substantial evidence of record, such as the Plaintiff's reported activities of daily living and the findings from Dr. Nolan's own mental status examinations of the Plaintiff, which showed largely appropriate behavior, good

16

memory, insight, and judgment, and only reported impairments in attention or concentration. (Id.). The Plaintiff essentially requests that this Court reweigh the evidence – this the Court will not do. Accordingly, the Court finds no reason to disturb the ALJ's discounting of Dr. Nolan's medical opinion.

### d. Mr. Patee

Finally, Plaintiff asserts that the ALJ should have given more than "partial weight" to the opinion of Licensed Clinical Social Worker Mr. Patee. (Dkt. 14 at 29). Specifically, Plaintiff claims that substantial evidence supports Mr. Patee's conclusion that Plaintiff would be absent more than four days per month, such as her lack of energy, fatigue, depression, and infrequent bathing. (Id. at 29-30). The Commissioner maintains that Mr. Patee's opinions are not supported by the record and that the ALJ reasonably relied on medical expert Dr. Brooks's opinion stating the same. (Dkt. 18 at 13).

In her opinion, the ALJ stated that Mr. Patee's opinion was given partial weight because the GAF scores are vague and only somewhat consistent with the evidence of the record, which showed that Alice has no more than moderate limitations in the four broad areas of mental functioning. (Dkt. 12-9 at 16, R. 1454). The ALJ also noted that the record documents little to no exacerbation of Alice's symptoms and that Plaintiff reported being able to live alone, drive, and shop in stores for groceries. (Id.). As to Mr. Patee's opinion that Plaintiff would have four work absences per month, the ALJ cited the inconsistent evidence of largely negative findings from psychiatric exams and the claimant's activities of daily living. (Id.). The

17

ALJ also noted that Mr. Patee provided no explanation in support of a limitation for absences from work. (Id.). The ALJ also relied on the opinion of medical expert Dr. Brooks, who specifically testified that Alice would have no issues with focus, attention or persisting, and that she would not be limited by any need to be absent due to flares in mental health. (Dkt. 12-9 at 73, R. 1511). The ALJ thus provided sufficient reasons for discounting Mr. Patee's medical opinion. Although the Plaintiff highlights her self-reporting of not showering consistently, lacking energy, and staying in bed, in light of the ALJ's proffered reasons, this is simply a request for this Court to reweigh the evidence. The Court will not do so here. Accordingly, the Court concludes that no error occurred in the ALJ's weighing of Mr. Patee's opinion.

    *iv. Off-Task Time*

Lastly, Plaintiff argues that the ALJ erred by not addressing any off-task behavior in the RFC. (Dkt. 14 at 31-32). Specifically, Plaintiff maintains that she would need to have the flexibility to change positions and stay on task, and that there was no indication from the ALJ or vocational expert that the three listed jobs of audit clerk, lens inserter, or document preparer would accommodate an individual who needed to shift positions. (Id.). Plaintiff ends by stating that the decision not to give more weight to Plaintiff's treating providers was vocationally relevant and harmful error. (Id.).

As the Undersigned has already discussed, the ALJ relied on Dr. Fischer's medical expert opinion that Plaintiff could sit for one hour, change positions while remaining on task, sit and work for another hour, take a break, sit and work for

18

another hour, change positions while remaining on task, sit and work for another hour, take a lunch break, and so on until the end of the workday. (Dkt. 12-9 at 54, 63-64, R. 1492, 1501-502). Accordingly, Plaintiff's assertion that she would need the flexibility to change positions and remain on task is not well-taken, because the ALJ did not credit Plaintiff or Dr. Cole's opinion that she required a limitation to alternate sitting and standing positions at will. Plaintiff identifies no other reason to justify a limitation for off-task behavior. Thus, the ALJ's failure to address off-task behavior in the RFC is harmless, at best. Accordingly, this issue is affirmed.

V. CONCLUSION

For the reasons detailed herein, the Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue accordingly.

So ORDERED.

Date: 3/31/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.